UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CRISPIN GUITY,

                              Petitioner,                      07 Civ. 0728 (RPP)

           - against -                        **OPINION AND ORDER**

ROBERT E. ERCOLE, Superintendent,

                              Respondent.
------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

On November 17, 2006, Crispin Guity ("Petitioner") brought this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his imprisonment for convictions on November 14, 2003 of attempted murder in the second degree, criminal possession of a weapon in the second degree, and assault in the second degree, following jury trial in New York State Supreme Court, Bronx County.[1]

In his pro se petition, Petitioner re-asserts two of the claims he raised on direct review: "1) the jury's verdict was not based on proof beyond a reasonable doubt and was against the weight of the evidence, thus depriving Petitioner of due process, since there was no physical evidence linking Petitioner to the crimes, no motive for the attacks, and the complainants gave inconsistent reports about the attacks; and 2) it was error for the Government to impeach its rebuttal witness with Grand Jury testimony in the absence of a limiting instruction that such evidence was for impeachment only, and did not constitute evidence in chief." (Petition at 5.)

---

[1] Petitioner delivered the petition to prison authorities to be mailed on November 17, 2006, less than one year from the date his conviction became final on December 27, 2005. See People v. Guity, 6 N.Y.3d 754 (2005). Accordingly, it is timely under the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), 28 U.S.C. § 2244(d)(1).

In an order, dated February 13, 2007, this Court concluded that the petition should not be summarily dismissed. The Court ordered Respondent to file an answer to the petition no later than March 15, 2007, and Petitioner to file reply papers by April 16, 2007. After this Court granted two written requests for extension of time to file a response, Respondent filed an affidavit and memorandum of law in opposition to the petition on June 27, 2007. Although given until October 1, 2007 to respond, Petitioner has not filed reply papers. For the reasons set forth below, the petition is denied.

**Background**

At Petitioner's trial, the Government presented evidence that on May 7, 2002 Petitioner repeatedly stabbed Pedro Hernandez and ordered the shooting of Alexander Gomez. Mr. Hernandez testified at trial that he had previously known Petitioner from seeing him occasionally on Ellis Avenue in the Bronx. (Tr. 35-39, 85-86.)[2] Mr. Hernandez also testified that about two years before his testimony at trial, Mr. Hernandez had a conversation with Petitioner's girlfriend, Emily. (Id. at 43.) Mr. Hernandez testified that he had never spoken to, or had any disagreement, with the Petitioner. (Id. at 43, 87.)

Mr. Hernandez also testified that on May 5, 2002, Mr. Hernandez saw the Petitioner, Emily, and her brother, Alex Ramirez, on the corner of Virginia and Ellis Avenues in the Bronx. (Id. at 42, 45, 116-117, 133.) According to Mr. Hernandez, Petitioner then called Mr. Hernandez over, but Mr. Hernandez was nervous because Petitioner was with three people and Mr. Hernandez was alone, so Mr. Hernandez simply walked away without incident. (Id. at 36-37, 41, 43, 45, 86-87, 116-17.)

---

[2] Respondent has supplied this Court with the trial transcript and copies of the briefs from the Petitioner and the Government to the New York Supreme Court, Appellate Division, First Department.

On May 7, 2002, at about 8:30 p.m., Mr. Hernandez was outside his apartment building when Petitioner approached him and asked if he had a "burner," meaning a gun. (Id. at 34-35.) Mr. Hernandez testified that he said "no," at which point Petitioner "reached," and Mr. Hernandez fled. (Id.) Mr. Hernandez said he ran to a Laundromat on Newbold Street while Petitioner, along with Frankie Ramirez, who is Emily's brother, gave chase and followed Mr. Hernandez into the Laundromat. (Id. at 44-45.) Mr. Hernandez testified that Petitioner repeatedly stabbed him in the face, shoulder, and head while Mr. Ramirez held Mr. Hernandez down and used profanity while accusing Mr. Hernandez of some type of involvement with Mr. Ramirez's family. (Id. at 48, 68.) Mr. Hernandez said he saw his friend, Alex Gomez, try to come inside the Laundromat. (Id. at 72-73.) According to Mr. Hernandez, Petitioner then approached Mr. Gomez outside the Laundromat, put the knife in front of Mr. Gomez's face, and asked him if he "want[ed] some." (Id. at 72-74.) Mr. Hernandez then heard Petitioner say to an unidentified man in the street near a pay phone, "bust him, bust him," meaning shoot him. (Id. at 74-75.) Mr. Hernandez heard shots and observed Mr. Gomez run away. (Id. at 75.) After being taken to the police precinct in an ambulance, Mr. Hernandez had his face stitched at Jacobi Hospital. (Id. at 51-54.)

At trial, Mr. Gomez corroborated Mr. Hernandez's testimony. Mr. Gomez testified that, on May 7, 2002, he saw a group of men chasing Mr. Hernandez. (Tr. 140.) Mr. Gomez ran after Mr. Hernandez and the individuals, and saw Mr. Hernandez in the Laundromat on the floor in a fetal position, being held and kicked by one person, and being stabbed by Petitioner. (Id. at 141.) Mr. Gomez stated that he tried to open the door to the Laundromat, but was unable to because Petitioner was blocking the door. (Id. at

3

142.) Initially, Petitioner's back was facing Mr. Gomez, but when Mr. Gomez attempted to open the door, Petitioner turned around, opened the door, and grabbed Mr. Gomez's chest. (Id. at 144.) Mr. Gomez said he had never seen Petitioner before that day. (Id. at 143). Mr. Gomez testified that Petitioner, who was holding a knife, asked him if he "wanted some," and that Petitioner ordered an individual behind Mr. Gomez to "bust him." (Id. at 147.) Mr. Gomez turned around, heard a gunshot, and saw an individual with a gun right in his face; however, Mr. Gomez was unable to identify the gunman. (Id.) At that point, Mr. Gomez smacked Petitioner's hand off his chest, and ran. (Id. at 148.) Mr. Gomez heard gunshots as he was running, and felt a burning sensation on his left leg from a gunshot wound. (Id. at 149.) Mr. Gomez ran home, and was soon thereafter treated at Jacobi Hospital for his injury. (Id. at 151.)

When Mr. Hernandez initially spoke with law enforcement after the incident, he was uncooperative. (Tr. 220, 226.) Mr. Hernandez only told Detective Richard Biglin that one black man, who was wearing a fitted hat, assaulted him. (Id. at 251-52.) Mr. Hernandez did not mention that there was another person involved, or that he had previously seen the individuals who attacked him. (Id. at 232.) Mr. Hernandez admitted that he was not completely honest with law enforcement, but said that he was nervous because his family lived in the same building as Frankie Ramirez. (Tr. 52, 83-84.)

Mr. Gomez was also interviewed by Detective Biglin, and Mr. Gomez informed law enforcement that two black men and one Hispanic man were involved. (Tr. 280.) Mr. Gomez did not mention that any of the individuals were wearing a hat. (Id. at 267.) Two days later, on May 9, 2002, Mr. Hernandez testified that he went to the precinct to tell Detective Biglin that he "wanted to tell the truth," because he found out his friend,

4

Mr. Gomez, was shot. (Tr. 54, 134.) Mr. Hernandez mentioned that Frankie Ramirez was one of the perpetrators, and that "Tupac" had cut him on his face. (Id. at 54, 127.)[3] On re-direct examination, Detective Biglin also testified that during his second interview with Mr. Hernandez, Mr. Hernandez told him Mr. Hernandez was afraid because his family lived near one of the assailants. (Id. at 278.) However, Mr. Hernandez did not tell the police that Petitioner had a large scar on his face. (Id. at 97.) At trial, Detective Barry Sullivan testified that Petitioner has a scar on the side of his face, spanning from the left temple, down the side of his left ear, to below his left ear. (Tr. 316.) On May 23, 2002, both Mr. Hernandez and Mr. Gomez were brought to the precinct to identify the perpetrator in a lineup. Petitioner was placed in a lineup with four fillers, who were all men were wearing hats "because they had different hairstyles." (Id. at 290.) Mr. Hernandez and Mr. Gomez separately identified Petitioner as the assailant. (Id. at 292.)

Petitioner called Lilliam Moraza as a defense witness. Ms. Moraza had been Petitioner's friend since he was thirteen years old. (Tr. 344.) Since 1998, Ms. Moraza resided in Bethlehem, Pennsylvania, and testified that Petitioner frequently visited her family in Pennsylvania. (Id. at 348-351.) She testified that Petitioner was close friends with her children, that Petitioner was once arrested in Pennsylvania for possession of a controlled substance, and that she posted bail for him in the Pennsylvania case. (Id.) Ms. Moraza said that Petitioner came to her house in Pennsylvania on May 6, 2002, the day before his May 7, 2002 court date for the case in which she posted bail. (Id.) She testified that on May 7, 2002, Petitioner came back to her apartment after his court date around 2:00 or 3:00 p.m. (Id. at 356.) She also testified that she and Petitioner talked

---

[3] Mr. Hernandez had referred to Petitioner as Tupac in an earlier conversation with Emily Ramirez. (Tr. 43-44.)

5

about his case for a while, and then Petitioner took a nap, ate something, went outside, and returned to her apartment at 6:00 p.m. (Id. at 359.) On cross-examination, she maintained that Petitioner never left her throughout the evening of May 7, 2002. (Id. at 363-64.) However, she admitted that she told the Grand Jury that Petitioner arrived at her house on May 6, 2002 between 8 p.m. and 9 p.m., but that at trial on direct examination, she stated he arrived between 6:30 and 7 p.m. (Id. at 352-53, 388.) Similarly, the acknowledged that she told the Grand Jury that Petitioner returned to her house from court on May 7, 2002 around 3 or 3:30 p.m., but that at trial on direct examination, she said he had arrived between 2 p.m. and 3 p.m. (Id. at 389-90.) Although she remembered details about May 7, 2002, she could not remember each and every time Petitioner visited her in Pennsylvania, or the last time Petitioner visited her before May 7, 2002. (Id. at 383-84.) At trial, Ms. Moraza stated she learned Petitioner was arrested about a week or two after he left her home in Pennsylvania on May 8, 2002.[4] (Id. at 406-407.) However, before the Grand Jury, she testified that she learned Petitioner was arrested two or three days after Petitioner left her home, and that she spoke to him the weekend after May 7, 2002. (Id. at 408.) Ms. Moraza also admitted that she suffered from agoraphobia, a panic disorder, and was taking Klonopin at the time of trial, at the time of her Grand Jury testimony, and on May 7, 2002. (Id. at 346, 374, 388.) She acknowledged that she was aware that drowsiness, confusion, and forgetfulness are all side effects of Klonopin. (Id. at 373.)

Following Ms. Moraza's testimony, the Government called Kevin Smalls as a rebuttal witness. Mr. Smalls testified that he knew Petitioner for about fifteen years. (Tr. 432.) Mr. Smalls testified that on May 7, 2002, he did not see Petitioner in a fight on

---

[4] Petitioner was arrested on May 23, 2002. (Tr. 469.)

6

Virginia Avenue in the Bronx. The Government then confronted Mr. Smalls with his testimony before the Grand Jury in Frankie Ramirez's case, in which he stated that Petitioner was in the fight on May 7, 2002. (Id. at 434-37.) Mr. Smalls acknowledged his prior testimony, but said he had been mistaken when he testified in front of the Grand Jury. (Id. at 437-39.) Defense counsel did not request a limiting instruction that the Grand Jury testimony could only be used to impeach Mr. Smalls' trial testimony, and could not be used as evidence of the truth of the matter asserted therein. The trial court did not independently provide such a limiting instruction. During summation, the Government referenced the substance of Mr. Smalls' Grand Jury testimony stating "[t]he law tells you that one witness is enough if you believe that witness. Well, you have two. You have got one witness in Pedro Hernandez who knows him and you have got one witness in Alexander Gomez who will never forget him, not even mentioning Kevin Smalls for a minute, his Little League coach who two weeks after the incident testified in a Grand Jury under oath before God that he was there…the question you ask yourselves is did a mistake happen here, are both Pedro Hernandez and Alexander Gomez and Kevin Smalls wrong." (Tr. 464, 469-70.) After the charge, the jury took one day to convict Petitioner of acting in concert with another in the attempted murder in the second degree of Mr. Gomez, and of criminal possession of a firearm in the second degree, as well as of assault of Mr. Hernandez in the second degree with a knife. (Id. at 547.)

On appeal, the Supreme Court of New York, Appellate Division, First Department, unanimously denied the two claims Petitioner raises in his habeas petition. The state appellate court found that:

> the verdict was based on legally sufficient evidence and was not against the weight of the evidence. Issues of credibility and identification, including the

> weight to be given to inconsistencies in testimony were properly considered by the jury and there is no basis for disturbing its determinations. As the People concede, since the crime was committed prior to the effective date of the legislation providing for imposition of a DNA databank fee, that fee should not have been imposed. Defendant's remaining contentions are unpreserved and we decline to review them in the interest of justice. Were we to review these claims, we would reject them.

People v. Guity, 22 A.D. 3d 331, (1st Dept. 2005) (internal citations omitted).

On October, 20, 2005, Petitioner submitted a letter to the New York Court of Appeals seeking permission to appeal both issues raised in the petition. (Resp't's Aff. Opp'n Pet., Ex. 3.) On December 27, 2005, the New York Court of Appeals denied Petitioner's application for leave to appeal. People v. Guity, 843 N.E. 2d 1162 (N.Y. 2005).

## II. DISCUSSION

### A. Standard of Review

Since Petitioner appears pro se, this Court is obliged to broadly construe Petitioner's pleadings and interpret them "to raise the strongest argument they suggest." Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996). Moreover, his submissions to this Court are "liberally construed in his favor." Simmons v. Abruzzo, 49 F.3d 83, 87 (2d Cir. 1995) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)).

### B. Petitioner's First Claim: The Sufficiency and Weight of the Evidence

In a proceeding for habeas corpus relief, there is a "very heavy burden…upon the defendant challenging the sufficiency of the evidence underlying his conviction." Knapp v. Leonardo, 46 F.3d 170, 178 (2d Cir. 1995). Petitioner asserts that the Government failed to present sufficient evidence to prove his guilt beyond a reasonable doubt, because the testimony of the prosecution's witnesses was incredible, the Government failed to

provide physical evidence linking Petitioner to the crime scene, and the Government failed to present evidence as to Petitioner's motive for the attack. (Brief of Appellant (Petitioner) to the Supreme Court of New York, Appellate Division ("Pet'r. App. Brief") at 25.) Specifically, Petitioner argues "[a] reasonable jury simply *should not* have concluded that [Petitioner] was guilty of shooting Gomez, possessing a gun, and stabbing Hernandez." (Id. at 28.) (emphasis added)

However, 18 U.S.C. § 2254 requires a strong level of deference to be given to the state court's findings of fact. The Court "must give the state court's adjudication a high degree of deference[,] must presume the state court's factual findings to be correct[,] and may overturn those findings only if petitioner offers clear and convincing evidence of their incorrectness." Hoi Man Yung v. Walker, 341 F.3d 104, 109 (2d Cir. 2002). See also, Smithwick v. Walker, 758 F. Supp. 178, 184 (S.D.N.Y. 1991) ("The findings of the state court are presumptively correct and entitled to a high degree of deference, as that court was in the best position to view the credibility of the witnesses and all of the facts as they were adduced [at trial].").

To set aside a jury verdict on the ground that there was insufficient evidence to establish the elements of a criminal offense, Petitioner must demonstrate that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324 (1979); see also Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir. 2002); Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999). United States v. Mariani, 725 F.2d 862, 865 (2d Cir. 1984) (Petitioner must demonstrate that there was no evidence from which a reasonable mind "might fairly conclude guilt beyond a reasonable doubt.") Since the applicable constitutional standard for making the determination of

whether there was sufficient evidence to prove guilt beyond a reasonable doubt was set forth by the Supreme Court in <u>Jackson</u>, the relevant question in this petition under the 18 U.S.C. §2254 is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact *could* have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson</u>, 443 U.S. at 324, (emphasis added).

In making this determination, the Court "must credit every inference that could have been drawn in the government's favor, and the government need not have precluded every reasonable hypothesis [consistent with innocence]...a conviction may be based upon circumstantial evidence and inferences based upon the evidence, and the jury is exclusively responsible for determining a witness' credibility." <u>United States v. Strauss</u>, 999 F.2d 692, 696 (2d Cir. 1993) (internal citations omitted).

Here, the trial testimony of Mr. Hernandez and Mr. Gomez conflicted with that of Ms. Moraza and Mr. Smalls as to the Petitioner's presence at the scene of the crime on May 7, 2002. This Court is unable to reassess the "fact specific credibility judgments by juries or to weigh conflicting testimony [o]n collateral review." <u>Vera v. Hanslmaier</u>, 928 F. Supp. 278 (S.D.N.Y. 1996), and "must presume that the jury resolved any questions of credibility in favor of the prosecution." <u>Id</u>. For this reason, the Court accepts that all issues of credibility were properly determined by the jury.

Furthermore, Petitioner's reliance on the lack of physical proof linking him to the scene of the crime is misplaced. Physical evidence is not required. <u>See</u>, <u>e.g.</u>, <u>United States v. Gonzalez</u>, 110 F.3d 936, 940-41 (2d Cir.1997) ("It is well settled that where, as here, the government's case is based primarily on eyewitness testimony describing criminal activity, any lack of corroboration [with physical evidence] goes only to the

weight of the evidence, not to its sufficiency. The weight is a matter for argument to the jury, not a ground for reversal on appeal.") (internal citations omitted); Simpson v. Portuondo, 2001 U.S. Dist. LEXIS 9581, at *37 (S.D.N.Y. July 12, 2001) (there is no requirement that eyewitness testimony be corroborated by physical evidence). While there were fingerprints taken at the scene, the prosecution's decision not to present that evidence at trial neither proves, nor fails to prove, an element material to the crime. A lack of physical evidence does not overcome Petitioner's burden, under the standard in Jackson v. Virginia, supra, to prove that no rational trier of fact could have reached a guilty verdict. The jurors were in the best position to determine whether the lack of physical evidence created a reasonable doubt in their minds as to the Government's proof of every element of the crime.

Finally, Petitioner's reliance on the lack of proof of motive is unpersuasive. Petitioner's motive is not an element of any of the crimes of which the Petitioner was convicted (N.Y.P.L. § 110/125.25(1), § 265.03(2), and § 120.05(2)).[5] Since the prosecution did not have the burden of proving motive, any absence of motive does not overcome Petitioner's burden in his habeas petition. Accordingly, the state court's denial of Petitioner's claims was not contrary to, or an unreasonable application of, the Jackson

---

[5] According to N.Y.P.L. §110 "[a]n attempt to commit a crime consists of attempt to commit some specific crime, performance of an act towards its commission, and failure to consummate." According to N.Y.P.L. § 125.25(1), a person is guilty of murder in the second degree when "[w]ith intent to cause the death of another person, he causes the death of such person or of a third person." According to N.Y.P.L § 265.03, "[a] person is guilty of criminal possession of a weapon in the second degree when:
(1) with intent to use the same unlawfully against another, such person:
   (a) possesses a machine-gun; or
   (b) possesses a loaded firearm; or
   (c) possesses a disguised gun; or
(2) such person possesses five or more firearms; or
(3) such person possesses any loaded firearm.
Finally, according to N.Y.P.L. § 120.05(2) "a person is guilty of assault in the second degree when, with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument.

standard. Petitioner has not met the burden of showing that no rational trier of fact could have found him guilty beyond a reasonable doubt.

Petitioner's first habeas claim also asserts that the verdict was against the weight of the evidence. According to N.Y.C.P.L. § 470.15(5), a state court is permitted to reverse or modify a conviction when it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." However, this Court cannot weigh the evidence once again, and this claim is not cognizable on habeas review. See United States v. Morrison, 153 F.3d 34, 49 (2d Cir. 1998) (deferring "to the jury's determination of the weight of the evidence and the credibility of the witnesses, and to the jury's choice of the competing inferences that can be drawn from the evidence."); Walton v. Ricks, 2002 U.S. Dist. LEXIS 25599, at *23 (S.D.N.Y., March 19, 2002); Kearse v. Artuz, 2000 U.S. Dist. LEXIS 12649 (S.D.N.Y., Sept. 1, 2000) (summarily dismissing challenge to verdict against the weight of the evidence on the ground that "disagreement with a jury verdict about the weight of the evidence is not grounds for federal habeas corpus relief"); Garrett v. Perlman, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) ("Petitioner's claim that his conviction was against the weight of the evidence is not a basis for habeas relief. Unlike a sufficiency of the evidence claim, which is based upon federal due process principles, a weight of the evidence claim is "an error of state law, for which habeas review is not available."); Gonzalez, supra at 941. Therefore, the Petitioner's first claim is denied.

  C. **Petitioner's Second Claim: The Government's Impeachment of Its Rebuttal Witness**

In his second claim, Petitioner asserts that N.Y.C.P.L. § 60.35 was violated when the trial court failed to issue a limiting instruction that Mr. Smalls' testimony could only be considered for impeachment purposes, and not evidence in chief.[6] (Pet'r. App. Br. at 34.) Petitioner alleges that he was highly prejudiced by this error and a new trial is required. (Id.) The trial record makes clear that Petitioner's trial counsel did not object to the impeachment of Mr. Smalls or the use of Mr. Smalls' testimony in summation, nor did trial counsel request a limiting instruction from the trial court. (Id. at 36.) As stated above, the state appellate court declined to review the Petitioner's claim because it was "unpreserved."[7]

"[I]n order to preclude federal review [under the adequate and independent state ground doctrine], the last state court to render judgment must 'clearly and expressly state…that its judgment rest[ed] on a state procedural bar.'" Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997) (quoting Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996), cert. denied, 520 U.S. 1108 (1997)). Here, the Appellate Division's decision that Petitioner's remaining contentions were "unpreserved" is sufficient to establish that it was relying on a procedural bar as an independent ground in disposing of the issue. See Harris v. Reed, 489 U.S. 255, 265 (1989). The Appellate Division's ruling was also "adequate" inasmuch

---

[6] N.Y.C.P.L. § 60.35(1) states that "[w]hen, upon examination by the party who called him, a witness in a criminal proceeding gives testimony upon a material issue of the case which tends to disprove the position of such party, such party may introduce evidence that such witness has previously made either a written statement signed by him or an oral statement under oath contradictory to such testimony."

[7] N.Y.C.P.L. § 470.05(2) states that "[f]or purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same. Such protest need not be in the form of an "exception" but is sufficient if the party made his position with respect to the ruling or instruction known to the court, or if in response to a protest by a party, the court expressly decided the question raised on appeal. In addition, a party who without success has either expressly or impliedly sought or requested a particular ruling or instruction, is deemed to have thereby protested the court's ultimate disposition of the matter or failure to rule or instruct accordingly sufficiently to raise a question of law with respect to such disposition or failure regardless of whether any actual protest thereto was registered."

as the contemporaneous objection rule, as codified in N.Y.C.P.L. § 470.05, is "firmly established and regularly followed" by courts in New York. Garcia v. Lewis, 188 F.3d 71, 79 (2d Cir. 1999); see also, Parreno v. Annetts, 2006 U.S. Dist. LEXIS 11065 at *20 (S.D.N.Y. 2006 Mar. 20, 2006) (holding that N.Y.C.P.L. § 470.05(2) was an "adequate" basis for barring petitioner's claim on appeal that the trial court incorrectly charged the jury that he was an interested witness); Morris v. Sears, 2007 WL 1875665, at *10 (S.D.N.Y. June 29, 2007) (holding that a claim is procedurally barred from habeas review when the state appellate court found that the claim was "unpreserved" and without merit.).

The Supreme Court has made clear that "[i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 749 (1991). Here, Petitioner has not shown any of these requirements. Cause for a default exists where a petitioner can show that (1) the factual or legal basis for a claim was not reasonably available to counsel, (2) some interference by state officials made compliance with the state procedural rule impracticable, or (3) the procedural default is the result of ineffective assistance of counsel. Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994). Petitioner makes no showing that any of these grounds are available to him.[8]

---

[8] Despite the failure of trial counsel to request a limiting instruction or object to the prosecution's summation, and the failure of appellate counsel to raise a Sixth Amendment claim of ineffective assistance trial counsel, the petition does not raise a claim of ineffective assistance of trial or appellate counsel. This Court cannot consider such a claim because it was not raised in the Appellate Division or in the application

This Court also cannot excuse the procedural default on the basis that failure to consider the claim will result in a fundamental miscarriage of justice. See Coleman v. Thompson, supra. In order to invoke such an exception to the procedural bar, Petitioner must show actual innocence, meaning "factual innocence, not mere legal insufficiency," Rosario v. United States, 164 F.3d 729, 733 (2d Cir. 1998). Petitioner has not made such a showing. To do so, he would have to present "new reliable evidence that was not presented and trial and show that it is more likely than not that no reasonable juror would have found [Petitioner] guilty beyond a reasonable doubt." Lucidore v. New York State Div. of Parole, 209 F.3d 107, 114 (2d Cir. 2000) (citing Schlup v. Delo, 513 U.S. 298, 329, 130 L. Ed. 2d 808, 115 S. Ct. 851 (1995)). Again, Petitioner has not made such a showing, and therefore the state procedural bar remains.

In any event, state court decisions concerning the state evidentiary rules do not pose issues of constitutional dimension, unless it "is so extremely unfair that its admission violates fundamental conceptions of justice." Dowling v. United States, 493 U.S. 342, 352 (1990) (quoting United States v. Lovasco, 431 U.S. 783, 790 (1977)). See also Estelle v. McGuire, 502 U.S. 62, 67-70 (1991); DiGugliemo v. Smith, 366 F.3d 130, 136 (2d Cir. 2004) ("alleged errors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause. State courts are the ultimate expositors of state law." (internal citations omitted)); Wray v. Johnson, 202 F.3d 515, 525 (2d Cir. 2000); Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998); Brown v. Walsh, 2006 U.S. Dist. LEXIS 64877, at*10-11 (S.D.N.Y. July 21, 2006).

---

for leave to appeal to the New York Court of Appeals. See Sweet v. Bennet, 353 F.3d 135, 142 at n.7 (2d Cir. 2003) (Petitioner "could not use ineffective assistance of appellate counsel as 'cause' for his procedural default…because [Petitioner] has not brought a claim in state court based on the notion that his counsel in state appellate proceedings was ineffective.")

To demonstrate such a Due Process violation, Petitioner must show that the evidence was both unfairly prejudicial and "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." <u>Dunnigan</u> at 125 (quoting <u>Johnson v. Ross</u>, 955 F.2d 178, 181 (2d Cir. 1992)). Here, Petitioner has not overcome that standard. Specifically, Mr. Smalls' Grand Jury testimony was merely corroboration of the testimony of the witnesses that the Petitioner was at the scene of the crime, and was fighting. (Pet.'r. App. Brief at 32-33.) At trial, Mr. Smalls testified that he did not see Petitioner at the scene of the crime, and that Mr. Smalls' earlier testimony was a mistake, which he never chose to correct. The question of whether to believe Mr. Smalls' Grand Jury or trial testimony was for the jury and cannot be reviewed here. <u>Kirby v. Senkowski</u>, 141 F.Supp.2d 383, 393 (S.D.N.Y. 2001). Mr. Smalls' Grand Jury testimony did not provide the basis for Petitioner's conviction. Although Mr. Smalls' Grand Jury testimony indicated that Petitioner was "fighting" at the scene of the crime on May 7, 2002 (Tr. 435-36.), it did not implicate Petitioner in any assault on Mr. Hernandez, in the attempted murder of Mr. Gomez, in the possession of a knife, or in the possession of a firearm. (<u>Id.</u>) Therefore, the utilization of Mr. Smalls' Grand Jury testimony, without proper instruction, and the Government's reliance on that testimony in summation, were not "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." <u>Dunnigan</u>, <u>supra</u>. Petitioner's second claim is not only procedurally barred, but the improper use of Mr. Smalls' Grand Jury testimony also did not violate Petitioner's Due Process rights.

## CONCLUSION

For the reasons stated above, Petitioner's § 2254 petition is denied in its entirety. In addition, because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. See 28 U.S.C. § 2253(c)(2); Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-13 (2d Cir. 2000); Soto v. United States, 185 F.3d 48, 51-53 (2d Cir. 1997). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Opinion and Order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438, 445 (1962).

IT IS SO ORDERED.

Dated: New York, New York
November 5, 2007

Robert P. Patterson, Jr.
U.S.D.J.

*Copy of this Opinion and Order Sent to:*

Petitioner

Mr. Crispin Guity
03-A-6591
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582-0010

Respondent

Mr. Rither Alabre, Esq.
Assistant District Attorney
Bronx County
198 East 161st Street
Bronx, NY, 10451
FACSIMILE: (718) 590-6523